```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------X
ASSOCIATION OF HOLOCAUST VICTIMS    x
FOR RESTITUTION OF ARTWORK AND      x
MASTERPIECES, a/k/a "AHVRAM,"       x
ET AL.,                             x    04 Cv. 3600(SWK)
                                    x
            Plaintiff               x
                                    x
        -against-                   x
                                    x
                                    x
BANK AUSTRIA CREDITANSTALT AG,      x    OPINION & ORDER
ET AL.                              x
                                    x
                                    x
            Defendants.             x
------------------------------------X
```

**SHIRLEY WOHL KRAM, U.S.D.J.**

Bank Austria Creditanstalt AG ("Bank Austria"), pursuant to Federal Rules of Civil Procedure ("Fed. R. Civ. P.") 12(b)(1) and 12(b)(6), moves to dismiss Plaintiff's First Amended Complaint ("Complaint"). Plaintiff opposes the motion to dismiss and "cross moves" for jurisdiction discovery, preservation of evidence, depositions <u>de bene esse</u>, limited production of documents, and other relief [sic]. Additionally, Defendant moves for sanctions pursuant to Fed. R. Civ. P. 11.

**BACKGROUND**

Beginning in 1998, several individual and class actions were filed against certain Austrian banks, including Bank Austria and Creditanstalt, in both the

Southern and Eastern Districts of New York, alleging that "the defendant banks had committed various torts and violations of international law arising out of the activities of the Nazis during and after World War II." In re Austrian and German Bank Holocaust Litig., 80 F. Supp. 2d 164 (S.D.N.Y. 2000). All of the actions were then consolidated into a single class action ("Class Action.")[1]

Four years ago, this Court approved a Class Action Settlement. In re Austrian and German Bank Litig., 80 F. Supp. 2d 164 (the "Bank Austria Settlement" or "Settlement"). The decision was affirmed by the Court of Appeals. D'Amato v. Deutsche Bank, 236 F.3d 78 (2d Cir. 2001). The $40 million settlement paid by Bank Austria was

---

[1] One of the cases consolidated was Watman v. Deutsche Bank, 98 Civ. 3938 (SWK)(the "Watman Action"), a class action for equitable and monetary relief stemming from the alleged unlawful receipt and conversion of stolen and/or looted assets and personal property, including "cash, securities, precious metals, jewelry, art treasures and family heirlooms, gold jewelry and gold coins" alleged to have been "deposited . . . into numbered or secret accounts and safe deposit boxes of the defendant German and Austrian banks." Watman, Am. Compl. ¶¶ 36-37. The Plaintiff Class included, inter alia, all victims of Nazi persecution and their heirs who, between 1933 and 1945 . . . had personal property looted from them or Aryanized by the Nazis or their co-conspirators and transferred to the defendant banks." Id. ¶ 15. Lead Counsel for plaintiffs in Watman was Edward D. Fagan. Mr. Fagan is also Plaintiff's counsel and claims to be a member of the purported association, AHVRAM, that has brought the instant action.

2

deposited into the Court's designated settlement fund and has been used to pay Holocaust survivors and their heirs.

**I. This Case Is Dismissed For Lack Of Subject Matter Jurisdiction**

After first circulating a draft of his Amended Complaint to journalists in Vienna, Austria, Mr. Fagan filed the instant action on May 11, 2004. See Memorandum of Law In Support of Defendant Bank Austria Creditanstalt AG's Motion To Dismiss The First Amended Complaint, dated November 8, 2004, at 8 n.8. Because he failed to properly serve the Defendant, he was given additional time to file an amended pleading, which he did on October 15, 2004. Initially, however, there was some confusion regarding the amended filing because Mr. Fagan had captioned it incorrectly. Finally, the motion to dismiss was fully briefed on January 6, 2005.

Because the procedural defects in this case are dispositive, no factual background will be provided. Plaintiff relies upon two alleged bases for subject matter jurisdiction: (1) the "laws of the City and State of New York, as well as violations of laws of nations and treaties of the United States," (Am. Compl. ¶ 49) and, "violations of International Law, including those as articulated and established by the International Court of Justice, the Law

3

of Nations, Jus Cogens [sic], treaties entered into by the United States and/or to which the United States is a signatory and are and have been declared cognizable and actionable in the Second Circuit." (Id. ¶ 53); and (2) this case "in part – calls for the Court to enforce and/or act upon certain aspects of" the prior Settlement Agreement in In Re Austrian and German Bank Holocaust Litig.[2]

By statute, "the district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." See 28 U.S.C. § 1331. It is axiomatic that jurisdiction exists only "when a federal question is presented on the face of the plaintiff's properly pleaded complaint." Caterpillar Inc. v. Williams, 482 U.S. 386, 392 (1987). A well-pleaded complaint must establish "either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on a resolution of a substantial question of federal law." Frazier v. Turning Stone Casino, 254 F. Supp. 2d 295, 302 (N.D.N.Y. 2003). See also Princz v. Fed. Rep. Of Germany, 26 F.3d 1166, 1176 (D.C. Cir. 1994)(complaint seeking Holocaust reparations for

---

[2] Plaintiff (correctly) appears to have dropped its claim that diversity jurisdiction exists.

4

plaintiffs' concentration camp injuries sounded in tort and quasi contract, not federal law).

The Amended Complaint in this case does not assert any federal law claims, nor is any question of federal law, much less a substantial one, implicated by the common law claims the Amended Complaint seeks to plead.[3] Amazingly, apart from two passing references to international and treaty law, the Amended Complaint fails to make any specific reference to any federal law. Accordingly, Plaintiff's first proffered basis for jurisdiction is without merit.

Plaintiff's second alleged ground for subject matter jurisdiction, namely that this case "in part – calls for the Court to enforce and/or act upon certain aspects of" the prior Settlement Agreement in In Re Austrian and German Bank Holocaust Litig., is not only without legal basis, it is little more than an end run around the Bank Austria Settlement. While this Court, in its Final Order and Judgment in the Bank Austria settlement, did expressly retain "continuing jurisdiction over the Settlement and

---

[3] While Count 12 of the Amended Complaint seeks a declaratory judgment, the Declaratory Judgment Act, 28 U.S.C. § 2201, cannot, in the absence of a controversy involving a federal question, confer federal question jurisdiction. Tasini v. New York Times Co., 184 F. Supp. 2d 350, 358 n. 12 (S.D.N.Y. 2002).

5

Settlement Agreement," see Final Order and Judgment ¶ 5, that settlement cannot confer subject matter jurisdiction here because this is an entirely separate action requiring an independent jurisdictional basis. See, e.g., Peacock v. Thomas, 516 U.S. 349, 355 (1996)("In a subsequent lawsuit involving claims with no independent basis for jurisdiction, a federal court lacks the threshold jurisdictional power that exists when ancillary claims are asserted in the same proceeding as the claims conferring federal jurisdiction"). Indeed, Plaintiff spends the first fifteen pages of an entirely sloppy, misleading and unresponsive brief[4] trying to get out from the Settlement, only then to opportunistically invoke that same 1998 agreement in a vain effort to salvage jurisdiction. In any event, it is abundantly clear that there is no subject matter jurisdiction; accordingly, the case is dismissed.[5]

**II. Plaintiff's Cross-Motion Is Denied**

Plaintiff moves for jurisdictional discovery, preservation of evidence, depositions de bene esse and limited production of documents. These requests are, in

---

[4] Apparently conceding the point, Plaintiff's opposition papers completely ignore Defendant's challenges to subject matter jurisdiction.

[5] Because of the jurisdictional bar, the Court does not reach the issue of whether the 1998 Settlement Agreement precludes this action; Plaintiff's effort to circumvent that agreement is, however, discussed, infra, at 10-15.

addition to being without basis in the law, mooted by the lack of subject matter jurisdiction. They are denied.

**III. The Motion To Impose Sanctions Is Granted**

On February 10, 2005, Defendant, in a detailed and lengthy memorandum, moved, pursuant to Fed. R. Civ. P. 11(b) and 28 U.S.C. § 1927, to impose sanctions on Plaintiff and its principal counsel and co-Plaintiff, Edward D. Fagan. Remarkably, as of the date of this writing, over six months after the sanctions motion was filed, Mr. Fagan has not responded.

### A. Standard For Sanctions Under Rule 11 and 28 U.S.C. § 1927

Rule 11, which is designed to deter baseless filings and curb abusive litigation, imposes an affirmative duty to conduct a reasonable inquiry into the factual and legal viability of claims. Eastway Constr. Corp. v. City of New York, 762 F.2d 243, 253 (2d Cir. 1985). It requires an attorney to sign every pleading or other paper filed with the court. The signature "certifies to the court that the signer has read the document, has conducted a reasonable inquiry into the facts and the law and is satisfied that the document is well grounded in both, and is acting without any improper motive." Business Guides, Inc. v. Chromatic Communications Enters., 498 U.S. 533, 542 (1991).

Rule 11 is intended to ensure that an attorney will "stop, think and investigate" before filing "baseless papers." Cooter & Gell v. Hartmax Corp., 496 U.S. 384, 398 (1990).

Under Rule 11, sanctions may be imposed on a person who signs a pleading, motion, or other paper for an improper purpose such as to delay or needlessly increase the cost of litigation, or does so without a belief, formed after reasonable inquiry, that the position espoused is factually supportable and is warranted by existing law or a nonfrivolous argument for the extension, modification, or reversal of existing law. See Caisse Nationale de Credit Agricole-CNCA, New York Branch v. Valcorp., 28 F.3d 259, 264 (2d Cir. 1994).

When a district court determines that Rule 11(b) has been violated, it may impose sanctions. Fed. R. Civ. P. 11(c). Both monetary and non-monetary sanctions are permitted. Fed. R. Civ. P. 11(c)(2). In fashioning a sanctions order, the Advisory Committee notes suggest the following considerations: (1) whether the improper conduct was willful or negligent; (2) whether it was part of a pattern of activity, or an isolated event; (3) whether it infected the entire pleading, or only one particular count or defense; (4) whether the person has engaged in similar conduct in other litigation; (5) whether it was intended to

injure; (6) what effect it had on the litigation process in either time or expense; (7) whether the responsible person is trained in law; (8) what amount, given the financial resources of the responsible person, is needed to deter that person from repetition in the same case; and (9) what amount is needed to deter similar activity by other litigants. See Rule 11(c) Advisory Comm. Notes (1993).

Separate from Rule 11, a district court has the inherent authority to sanction parties appearing before it for acting in bad faith, vexatiously, wantonly, or for oppressive reasons. See Sassower v. Abrams, 833 F.Supp. 253, 272 (S.D.N.Y. 1993). The Court's inherent power to sanction stems from the very nature of the courts and their need to be able to manage their own affairs so as to achieve the orderly and expeditious disposition of cases. Id.

Additionally, 28 U.S.C. § 1927 provides that an attorney "who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorney's fees reasonably incurred because of such conduct." 28 U.S.C. § 1927. "To impose sanctions under either authority, a court must find clear evidence that (1) the offending party's claims were entirely without color,

and (2) the claims were brought in bad faith—that is, 'motivated by improper purposes such as harassment or delay.'" Eisemann v. Greene, M.D., 204 F.3d 393, 396 (2d Cir. 2000). There must be a showing of subjective bad faith on the part of the offending attorney. Ted Lapidus, S.A. v. Vann, 112 F.3d 91, 96 (2d Cir. 1997). However, bad faith "can be inferred when the attorney's actions are so completely without merit as to require the conclusion that they must have been undertaken for some improper purpose such as delay." Vacco v. Operation Rescue Nat'l, 80 F.3d 64, 72 (2d Cir. 1996)(internal quotation marks omitted).

### B. Edward D. Fagan's Conduct In This Litigation Clearly Warrants Sanctions

Mr. Fagan's actions in this case go far beyond (but certainly include) a lack of preparation and lack of professionalism. In addition to glaringly inadequate filings, utter disregard for the court, its schedule, and the rules of procedure, it is obvious that Mr. Fagan has misrepresented critical facts.[6]

---

[6] While the jurisdictional bar prevents the Court from determining whether the instant lawsuit is legally barred by the Bank Austria Settlement, to address the Rule 11 and § 1927 applications, the Court must look at that Settlement.

In ¶ 271 of the Amended Complaint, Mr. Fagan asserts that the word "ARTWORK"[7] does not appear in the Settlement Agreement and Release because "the 1998 Claims related EXCLUSIVELY to bank accounts, monies or assets . . ." Id. ¶ 275. This is totally false. The Settlement Agreement and Release defines "Released Claims" to include, inter alia, claims for "Looted and/or Aryanized Assets," (Settlement Agreement ¶ 1(B)), which specifically include "any and all personal . . . property, including . . . silver, gold, jewelry . . . [and] art masterpieces." Class Action Compl. ¶ 17.[8]

In the instant case, Mr. Fagan also asserts that an alleged scheme to defraud occurring from "the 1950s to the present" falls outside the scope of the Settlement. Am. Compl. at 23 n.3. Again, Mr. Fagan's claim is belied by the Settlement, which states that "actions, conducts, or omissions on or subsequent to January 1, 1947 that result

---

[7] Numerous words and phrases in Mr. Fagan's papers are capitalized, italicized, boldfaced, or underlined. At times, this appears to be for emphasis; however, at other times, it appears entirely random. In any event, the Court refers herein to words and phrases as they appear in Mr. Fagan's submissions.

[8] Further, Mr. Fagan's complaint in the Austrian and German case, Watman, alleged that "cash, securities, precious metals, jewelry, art treasures and family heirlooms, gold jewelry and gold coins" were "deposited . . . into numbered or secret accounts and safe deposit boxes of the defendant German and Austrian banks." See 11/08/04 Moerdler Decl. Ex. 17, Watman Am Compl. ¶¶ 36-37.

from, arise out of or relate to the actions, conduct, or omissions of the Releasees prior to January 1, 1947" are explicitly covered by the Agreement. Settlement Agreement ¶ 7. Moreover, according to that same agreement, the parties specifically agreed that Bank Austria would be released from all claims "from the beginning of time to the date of this Agreement" relating to Holocaust-era conduct and the claims in the Consolidated Class Action Complaint, including those related to "looted and/or Aryanized Assets," which include "art masterpieces." In light of that release, it is, quite frankly, incomprehensible that Mr. Fagan would initiate the instant action.

Mr. Fagan's deceptions are not limited to the above. Despite his representation that AHVRAM, the purported entity of which he claims to be a member and brings this suit on behalf of, "was formed," Am. Compl. at 1 n.1, there is, according to the Defendant, no record of such an entity being formed in New York State as of the filing of the Amended Complaint.[9] See Memorandum In Support of Defendant Bank Austria Creditanstalt AG's Motion To Impose Sanctions, dated February 10, 2005, at 19-20. To that end, Mr. Fagan

---

[9] As of this writing, Mr. Fagan has offered no evidence that AHVRAM does, or for that matter, has ever, existed.

appears to be seeking damages on behalf of a fictitious entity.

Perhaps most seriously, however, Mr. Fagan is proceeding in direct violation of New York's Champerty Statute and Applicable Disciplinary Rules. Champerty is defined as "maintaining a suit in return for financial interest in the outcome." In re Primus, 436 U.S. 412, 425 n. 15 (1978). Section 488 of the New York Judiciary Law provides, in pertinent part, that:

> An attorney or counselor shall not:
>
> 1. Directly or indirectly, buy, take an assignment of or be in any manner interested in buying or taking an assignment of a bond, promissory note, bill of exchange, book debt, or other thing in action, with the intent and for the purpose bringing an action thereon. . .
> 3. An attorney or counselor who violates the provisions of this section is guilty of a misdemeanor.

N.Y. Jud. Law § 488 (McKinney 1983). Thus, under New York law, attorneys are prohibited from purchasing an interest in an action where the primary purpose is "to enable the attorney to commence a suit thereon." Sprung v. Jaffe, 3 N.Y. 2d 539, 540 (1957).

In addition, New York Disciplinary Rule 5-103 states in pertinent part that:

> A lawyer shall not acquire a proprietary interest in the cause of action or subject

> matter of litigation he or she is conducting for a client, except that the lawyer may: 1. Acquire a lien granted by law to secure the lawyer's fee or expenses. 2. Except as provided in DR 2-106 [1200.11](C)(2) or, 3. Contract with a client for a reasonable contingent fee in a civil case.

DR 5-1903.

In the Amended Complaint, Mr. Fagan claims to possess "interests in certain of The Stolen Artwork and/or Collections, including but not limited to portions of the Hatvany Collections" by virtue of "Plaintiffs Deutsch who sold and/or transferred to Fagan portions of interests acquired from Hatvany's Heirs in 1973." Am. Compl. ¶¶ 27-28. Accepting Mr. Fagan's allegations as true, it is clear that he acquired these "claims" for the sole purpose of bringing this action. Moreover, by acquiring this proprietary interest in the litigation, Fagan has, at the very least, run afoul of the disciplinary rules.

In light of the preceding, and in accordance with Rule 11, 28 U.S.C. § 1927 and the factors set forth in the Advisory Committee Notes, the Court finds that: (1) Mr. Fagan's claims in this matter are entirely without color; and (2) the claims were brought in bad faith. See Eisemann, 204 F.3d at 396. Though independently each of the following would be sufficient to find bad faith, certainly when aggregated, Mr. Fagan's scattershot

14

pleadings, his disregard for the court and its rules, his flagrant misrepresentations in the Amended Complaint, his circumvention of the Bank Austria Settlement, and his attempt to profit by buying into the litigation constitute subjective bad faith. Id.; Ted Lapidus, S.A., 112 F.3d at 96. Such a finding is only bolstered by the fact that this case appears to be part of a pervasive and disturbing trend.[10] Additionally, as a graduate of Cardozo Law School with 25 years in practice, Mr. Fagan's conduct is simply inexcusable. Accordingly, pursuant to Rule 11, this Court's inherent power, and 28 U.S.C. § 1927, Edward D. Fagan is hereby formally sanctioned.

In accordance with the formal sanctions, the Court also orders the following:

1. Mr. Fagan is to pay all of to Bank Austria's reasonable litigation costs and fees in connection with this action;[11]

2. Mr. Fagan is fined $5,000.00, which is due immediately, and should be remitted to the Clerk of the Court, United States District

---

[10] At minimum, Mr. Fagan, through AHVRAM, is pursuing cases against Bank Austria, the Russian Federation, the Republic of Germany, the Republic of Hungary, the United States of America, and Sotheby's Holdings.

[11] Bank Austria should, within 21 days of receipt of this Opinion & Order, submit its fees and costs to the Court.

Court, Southern District of New York, 500 Pearl Street, New York, NY 10007.[12]

---

[12] While the Court, at this time, declines to enjoin Mr. Fagan from filing any actions in federal court related to <u>In re Austrian and German Bank Holocaust Litigation</u> without first seeking permission, the Court may revisit that issue should Mr. Fagan (or any other "association" of which he is purportedly a member), continue to initiate harassment suits.

SO ORDERED.

_____
SHIRLEY WOHL KRAM
UNITED STATES DISTRICT JUDGE

Dated:   New York, New York
         August 19, 2005