UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------X
ASSOCIATION OF HOLOCAUST VICTIMS       x
FOR RESTITUTION OF ARTWORK AND         x
MASTERPIECES, a/k/a "AHVRAM,"          x
ET AL.,                                x        04 Civ. 3600(SWK)
                                       x
                    Plaintiff          x
                                       x
            -against-                  x
                                       x
                                       x
BANK AUSTRIA CREDITANSTALT AG,         x        **OPINION & ORDER**
ET AL.                                 x
                                       x
                                       x
                    Defendants.        x
-----------------------------------X

**SHIRLEY WOHL KRAM, U.S.D.J.**

In May 2004, the Association of Holocaust Victims for
Restitution of Artwork and Masterpieces ("AHVRAM") and several
individuals (collectively "Plaintiffs") filed a $6.8 billion
lawsuit against various corporations, governmental entities, and
financial institutions, including Bank Austria Creditanstalt AG
("Bank Austria"), alleging the theft, retention, and sale of
artwork looted during the Holocaust. On August 19, 2005, this
Court dismissed Plaintiffs' complaint ("August 19 Order"). Ass'n
of Holocaust Victims for Restitution of Artwork & Masterpieces
v. Bank Austria Creditanstalt AG, No. 04 Civ. 3600, 2005 U.S.
Dist. LEXIS 17411, at *7 (S.D.N.Y. Aug. 19, 2005). In addition,
the Court granted Bank Austria's request for sanctions against

Plaintiffs' counsel, Edward D. Fagan, ordered Mr. Fagan to pay Bank Austria's fees and costs, and fined him $5,000. Id.

Plaintiffs now move for reconsideration of the August 19 Order, leave to amend their complaint, and a stay of the Court's judgment.[1] For the reasons set forth below, the Court denies or dismisses all motions. In addition, the Court establishes the amount of fees and costs due to Bank Austria, and orders Mr. Fagan to pay his fine to the Court immediately.

## I. Plaintiffs' Moving Papers

On September 16, 2005, Plaintiffs filed a "Notice of Motion Pursuant to FRCP Rule 60," requesting reconsideration of the August 19 Order, leave to amend their complaint, and a stay of the Court's judgment ("Notice of Motion for Reconsideration"). (Pls.' Notice of Mot. Pursuant to FRCP Rule 60, Sept. 16, 2005.) Additionally, Plaintiffs submitted an affidavit signed by Edward D. Fagan ("Fagan Affidavit"). (Fagan Aff. September 16, 2005.) However, Plaintiffs failed to submit a memorandum of law in support of their motion. The Court recognized the omission and, on September 28, 2005, granted Plaintiffs until October 7, 2005 to supplement the motion. As of this Opinion, Plaintiffs have neither submitted supplemental materials nor requested a further

---

[1] The background of this litigation, and a discussion of the conduct underlying the Court's order of sanctions, is contained in the August 19 Order. Only those facts necessary to the issues presented in this motion are repeated below.

extension. Consequently, the Court decides Plaintiffs' motion on the basis of the papers currently before it.

## A. Plaintiffs' Motion for Reconsideration is Denied[2]

Plaintiffs move for reconsideration of the August 19 Order "based upon newly discovered evidence and for other equitable reasons" pursuant to Federal Rule of Civil Procedure 60. (Pls.' Notice of Mot. Pursuant to FRCP Rule 60, at 2.) Although Plaintiffs do not specify the subsections of Rule 60 that they believe are applicable, their moving papers only appear relevant to part (b), subsections (2) and (6).

Under Rule 60(b)(2), a party may move the court to reconsider an order when the party presents "newly discovered evidence which by due diligence could not have been discovered" prior to the order. Fed. R. Civ. P. 60(b)(2). "In order to succeed on a motion pursuant to Rule 60(b)(2), the movant must present evidence that is 'truly newly discovered or . . . could not have been found by due diligence.'" See United States v. Potamkin Cadillac Corp., 697 F.2d 491, 493 (2d Cir. 1983) (quoting Westerly Elecs. Corp. v. Walter Kiddie & Co., 367 F.2d 269, 270 (2d Cir. 1966)), cert denied, 462 U.S. 1144 (1983). New

---

[2] Plaintiffs recently appealed the decision underlying this motion for reconsideration. See infra note 4. While the district court may not grant a Rule 60(b) motion without the appellate court's permission once the appellate court has taken an appeal, "the district court can entertain and deny the rule 60(b) motion." Toliver v. County of Sullivan, 957 F.2d 47, 49 (2d Cir. 1992) (per curiam).

evidence offered in support of the motion must be "highly convincing." Kotlicky v. United States Fid. & Guar. Co., 817 F.2d 6, 9 (2d Cir. 1987) (citation omitted).

In support of their motion, Plaintiffs rely on the Fagan Affidavit, which is largely a personal narrative recounting the formation of AHVRAM, clarifying the organization's goals, and restating the merits of the complaint. (Fagan Aff. ¶¶ 3-23, 29-39, 76-82.) These portions of the affidavit present no newly discovered evidence, and are more naturally read as a long overdue response to Bank Austria's motion for sanctions, which challenged the existence of AHVRAM and the validity of the complaint. (Mot. to Impose Sanctions, Mar. 7, 2005.) Because this "evidence" is in no sense newly discovered, it clearly does not comprise proper grounds for reconsideration.

The Fagan Affidavit also alleges that evidence relating to the substance of their complaint has been discovered "since late 2003/2004" (Fagan Aff. ¶ 40) and "in the last few weeks, months, and years" (Fagan Aff. ¶ 69). However, the Affidavit fails to distinguish evidence that was "truly newly discovered" after the Court's August 19 Order from evidence that Plaintiffs discovered in the "months" and "years" before that Order. Even assuming that the Fagan Affidavit alleges any evidence not in Plaintiffs' possession prior to the Court's Order, the Fagan Affidavit fails to explain why any of the allegedly new evidence "could not have

been found by due diligence" other than to suggest, without documentation, the existence of "a conspiracy at the highest levels of government." (Fagan Aff. ¶¶ 50, 71-75.) Plaintiffs' vague explanations for why evidence was not offered earlier are unconvincing and unsubstantiated, leading this Court to "reject the explanations and to consider the 'evidence' not newly discovered." Potamkin Cadillac Corp., 697 F.2d at 493.

Moreover, the Fagan Affidavit's "unsubstantiated conclusory allegations" of new evidence are not "highly convincing," and warrant no change from the Court's prior ruling.[3] Long v. Carberry, 151 F.R.D. 240, 244 (S.D.N.Y. 1993). Plaintiffs' new evidence fails to cure the complaint's "'fundamentally preliminary' defect[:] lack of subject matter jurisdiction." Fidenas AG v. Compagnie Internationale Pour L'Informatique CII Honeywell Bull S.A., 606 F.2d 5, 6 (2d Cir. 1979). To warrant reconsideration of their complaint, Plaintiffs must present new evidence providing some indication of the action's jurisdictional basis. Not a single paragraph of the Fagan

---

[3] For example, Plaintiffs purport to have evidence "show[ing] that every individual, institution, government and/or governmental entity involved in the conspiracy against Prof. Hans Deutsch my father [sic] was paid, and/or received something of benefit or value" (Fagan Aff. ¶ 64), but fail to allege any specific transactions. Plaintiffs also offer, "[b]y way of example, Hungarian and Austrian entities and government [sic] received or kept important paintings and collections and/or received monies" (Fagan Aff. ¶ 65), but provide no further detail.

Affidavit bears upon the complaint's jurisdictional deficiency. In short, even if newly discovered, "the evidence presented in the [Fagan Affidavit] itself would not justify overturning the prior decision." In re Joint E. & S. Dist. Asbestos Litig., 774 F. Supp. 116, 120 (S.D.N.Y. 1991).

Under Rule 60(b)(6), a court also has discretion to grant reconsideration of an order for "any other reason justifying relief." Fed. R. Civ. P. 60(b)(6). Relief under Rule 60(b)(6) "is properly invoked where there are extraordinary circumstances, or where the judgment may work an extreme and undue hardship." Matarese v. LeFevre, 801 F.2d 98, 106 (2d Cir. 1986) (citations omitted), cert. denied, 480 U.S. 908 (1987). Plaintiffs' submissions provide no support for reconsideration under either of these exceptional grounds. Accordingly, reconsideration under this subsection is inappropriate.

In light of Plaintiffs' failure to present "highly convincing," newly discovered evidence within the meaning of Rule 60(b)(2), and because the Court finds no other reasons justifying reconsideration of its previous Order, Plaintiffs' motion for reconsideration is denied.

**B. Plaintiffs' Request for Permission to File a Second Amended Complaint Is Dismissed for Lack of Jurisdiction**

Plaintiffs also request permission to file a second amended complaint pursuant to Federal Rule of Civil Procedure 15. (Pls.'

Notice of Mot. Pursuant to FRCP Rule 60, at 2.) Due to Plaintiffs' recently filed notice of appeal,[4] the Court is currently without jurisdiction to permit an amendment. See Hernandez v. Coughlin, 18 F.3d 133, 138 (2d Cir. 1994); Denny v. Barber, 576 F.2d 465, 468 (2d Cir. 1978). Consequently, Plaintiffs' request is dismissed.

**C. Plaintiffs' Request for a Stay is Denied**

Finally, Plaintiffs request a stay of the judgment pending their appeal to the Second Circuit.[5] Pursuant to Federal Rule of

---

[4] On September 15, 2005, Plaintiffs appealed the August 19 Order to the Federal Circuit. (Pls.' Not. of Appeal, Sept. 15, 2005.) Apparently recognizing that they filed their appeal with the wrong Circuit, Plaintiffs filed an amended notice of appeal to the Second Circuit two weeks later, this time appealing the August 29, 2005 Judgment of the Court. (Pls.' Am. Not. of Appeal, Sept. 28, 2005.) Whether Plaintiffs' amended notice of appeal is judged to relate back to the original notice of appeal or is considered on its own merits, Plaintiffs' appeal appears to be timely. Fed. R. App. P. 4(a)(1)(A) (allowing 30 days for timely notice of appeal).

[5] The caption of Plaintiffs' Notice of Motion for Reconsideration includes a subsidiary request "for a stay of the August 19, 2005 Opinion & Order," but the body of that document fails to specify the authority by which the stay is requested. The Court construes the motion as seeking a stay of the August 29, 2005 Judgment, rather than the August 19 Order; thus, the automatic 10-day stay provided for in Fed. R. Civ. P 62(a) expired on September 12, 2005, four days before Plaintiffs filed this Motion. A stay pursuant to Fed. R. Civ. P. 62(b), pending disposition of Plaintiffs' Rule 60 motion, is also inappropriate because the Court has disposed of the Rule 60 motion in this very Opinion. Ultimately, the Fagan Affidavit is made in support of "a Stay pending appeal" (Fagan Aff. ¶ 1) and, though Plaintiffs did not properly file an appeal with the Second Circuit until two weeks after this motion, see supra note 4, the Court construes the motion as requesting a stay of the judgment pending the September 28, 2005 appeal.

Civil Procedure 62(d), upon posting a supersedeas bond, a moving party may obtain a stay of judgment pending appeal. See Murphy v. Arlington Cent. Sch. Dist. Bd. of Educ., No. 99 Civ. 9294, 2003 WL 22048775, at *1 (S.D.N.Y. Sept. 2, 2003). The Court's August 29, 2005 Judgment requires Plaintiffs' counsel, Mr. Fagan, to pay a $5,000 fine and Bank Austria's reasonable attorney's fees and costs. At this time, Mr. Fagan has neither posted, nor expressed a willingness to post, a supersedeas bond.

The Court may, in its discretion, grant a stay without requiring a supersedeas bond. Marcoux v. Farm Serv. & Supplies, Inc., 290 F. Supp. 2d 457, 485 (S.D.N.Y. 2003). In evaluating the applicability of this narrow exception, a court considers (1) whether movants are likely to prevail on the merits of their appeal; (2) whether, without a stay, movants will be irreparably injured; (3) whether issuance of a stay will substantially harm other parties interested in the proceedings; and (4) where the public interest lies. De la Fuente v. DCI Telecomms., Inc., 269 F. Supp. 2d 237, 240 (S.D.N.Y. 2003) (citing Hilton v. Braunskill, 481 U.S. 770, 776 (1987)). "The party seeking the stay without a bond has the burden of providing specific reasons why the court should depart from the standard requirement of granting a stay only after posting of a supersedeas bond in the full amount of the judgment." Id.

To evaluate whether Plaintiffs' submission supports a waiver of the bond requirement, the Court looks to the Fagan Affidavit. Regarding the first <u>Hilton</u> factor, the Fagan Affidavit does not address the grounds for dismissal and simply denies that Mr. Fagan's actions warranted sanctions. (Fagan Aff. ¶¶ 79-82). Unsupported denials of liability and a complete failure to contest or attempt to cure the complaint's deficiencies are insufficient to show Plaintiffs' likelihood of success on appeal. Furthermore, nothing in the Fagan Affidavit can be construed to have any bearing on the final three <u>Hilton</u> factors, all of which Plaintiffs have the burden to establish.

In conclusion, because Plaintiffs have failed to post bond to obtain a stay of the judgment and provide insufficient support for the Court to discretionarily waive the bond requirement, the request for a stay of the judgment is denied.[6]

## II. Mr. Fagan's Liability for Bank Austria's Fees and Costs

On August 19, 2005, the Court sanctioned Mr. Fagan, citing his attempted circumvention of an earlier Bank Austria settlement, his conduct during the course of litigation, and his apparently champertous stake in the action. The Court ordered Mr. Fagan to pay Bank Austria's reasonable litigation fees and

---

[6] Upon posting a supersedeas bond, Plaintiffs are still entitled to an automatic stay of the judgment. <u>Marcoux</u>, 290 F. Supp. 2d at 485. However, Plaintiffs are required to post bond in the full amount of the judgment. <u>See</u> <u>Harris v. Butler</u>, 961 F. Supp. 61, 62 (S.D.N.Y. 1997).

costs in connection with this action. <u>Ass'n of Holocaust Victims for Restitution of Artwork & Masterpieces</u>, 2005 U.S. Dist. LEXIS 17411, at *12-18 (S.D.N.Y. Aug. 19, 2005). In compliance with the Court's Order, Bank Austria submitted a complete list of the attorney's fees recorded and the costs incurred during its defense of the lawsuit. (Moerdler Decl. Ex. A Sept. 8, 2005.) Alhough Mr. Fagan did not oppose Bank Austria's fee application, the Court feels duty-bound to ensure that the amount of attorney's fees sought is reasonable. <u>Cf.</u> <u>In re Texaco, Inc. S'holder Litig.</u>, 20 F. Supp. 2d 577, 589 (S.D.N.Y. 1998) (opining that courts "are obliged to carefully scrutinize applications for counsel fees"), <u>rev'd on other grounds sub nom. Kaplan v. Rand</u>, 192 F.3d 60 (2d Cir. 1999).

### A. Calculating Reasonable Attorney's Fees and Costs

When assessing attorney's fees as a sanction under Rule 11, district courts in this Circuit often use the "lodestar" method to evaluate the reasonableness of fees. <u>See, e.g.</u>, <u>Kirschner v. Zoning Bd. of Appeals of Valley Stream</u>, 159 F.R.D. 391, 395 (E.D.N.Y. 1995). "That method initially estimates the amount of the fee award by multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate." <u>Id.</u> at 396 (citing <u>Pennsylvania v. Delaware Valley Citizens' Council for Clean Air</u>, 478 U.S. 546, 563 (1986)).

In establishing a reasonable hourly rate, "district courts generally must apply prevailing market rates for comparable attorneys of comparable skill and standing in the pertinent legal community." Savoie v. Merchants Bank, 166 F.3d 456, 463 (2d Cir. 1999). "It is well-established that the prevailing community the district court should consider to determine the lodestar figure is the district in which the court sits." Luciano v. Olsten Corp., 109 F.3d 111, 115 (2d Cir. 1997).

Bank Austria is represented by Stroock & Stroock & Lavan ("Stroock"), a national law firm headquartered in New York City. Stroock commonly represents clients in high-stakes corporate litigation, and the current case is no exception. After representing Bank Austria in its settlement of Holocaust claims over the past several years, negotiations in which Mr. Fagan was intimately involved, Stroock was again called on to defend Bank Austria against the instant complaint and its $6.8 billion prayer for relief. (Am. Compl. ¶¶ 279-89.) Stroock staffed the massive lawsuit with eight different lawyers, ranging from first- and second-year associates to partners and counsel with nearly fifty years of complex litigation experience. (Moerdler Decl. ¶ 7.) Though Bank Austria provides the exact billing rates for each of the attorneys involved in the case,[7] it limits its

---

[7] Billing rates for Stroock attorneys vary from $245 per hour for first- and second-year associates to $730 per hour for senior

request to $350 per hour for partners staffed on the case and $300 per hour for associates.

While $350 per hour for partners engaged in high-stakes corporate litigation is certainly a reasonable rate, and $300 per hour for mid- to senior-level associates is within reason, see, e.g., Berlinsky v. Alcatel Alsthom Compagnie Generale D'Electricite, 970 F. Supp. 348, 351 (S.D.N.Y. 1997) (awarding $365 per hour to senior associates and up to $495 per hour for seasoned partners); Auscape Int'l v. Nat'l Geographic Soc., No. 02 Civ. 6441, 2003 WL 21976400, at *5 (S.D.N.Y. Aug. 19, 2003) (awarding $215-$495 per hour for associates and partners at a large national law firm), the Court will reduce the hourly rate for hours expended by the two junior associates staffed on the case. For first- and second-year associates, the Court reduces the hourly rate to $225 per hour.[8]

The Court continues its analysis by reviewing the number of hours expended on the litigation. Bank Austria indicates that the eight attorneys assigned to the case expended a total of

partners with decades of litigation experience. (Moerdler Decl. ¶ 7.)
[8] The Court recognizes that Bank Austria blended the hourly rates for associates of varying levels of experience. Given the detailed time records Bank Austria has provided, however, the Court is able, and so chooses, to set an exact hourly rate for different classes of associates. The $225 rate used in this Opinion is in line with prevailing authority in this district and nearer the rate Stroock typically bills for its junior associates. (Moerdler Decl. ¶ 7.)

1,309.1 hours. (Moerdler Decl. ¶ 8.) This time was spent drafting several revisions of the motion to dismiss, drafting a motion to quash, and preparing the Rule 11 motion. According to Bank Austria, the fees, billed at customary hourly rates, reached $626,145.00. (Moerdler Decl. ¶ 9.) Under the $350/$300 rate structure detailed in the fee application, Bank Austria would be entitled to $414,895.00 in fees. (Moerdler Decl. ¶ 8.) After reducing the junior associates' hourly rate to $225 per hour, the lodestar amount comes to $404,838.00.

Stroock's records begin on April 1, 2004, the day of Mr. Fagan's Austrian news conference, and end on May 12, 2005, nearly two months after Bank Austria filed its motion for sanctions against Mr. Fagan. While it may be reasonable, and perhaps even wise, to begin preparing for an imminent filing and to monitor the case after formal court submissions have concluded, it is not clear that this time is compensable under Rule 11. The Court would have no power to sanction Mr. Fagan if he had never filed the complaint, Fed. R. Civ. P. 11(b) (limiting sanctionable conduct to representations to the court), and thus it declines to make Mr. Fagan liable for any hours prior to Plaintiffs' filing of the complaint or after Bank Austria filed its motion for sanctions. The removal of the 40.5 hours expended on or before May 11, 2004, and the 0.7 hours

spent after March 7, 2005 reduces the total number of hours to 1,267.9 and the lodestar figure to $390,898.00.

Additionally, while Stroock's fee application does an exemplary job of breaking its hours down by attorney and day, there are a number of time entries that utilize "block billing."[9] While not prohibited, block billing has a tendency to obfuscate the amount of time expended on distinct tasks and introduces an element of vagueness into a fee application, making it difficult to determine if the reported hours are "duplicative or unnecessary." Sea Spray Holdings, Ltd. v. Pali Financial Group, Inc., 277 F. Supp. 2d 323, 325-26 (S.D.N.Y. 2003). Vagueness also plagues a number of time entries that are simply described as "[a]ttention to" a certain task or "research on various issues." See Vishipco Line v. Charles Schwab & Co., No. 02 Civ. 7823, 2003 WL 1936142, at *2 (S.D.N.Y. Apr. 23, 2003); In re Spectre Group, Inc., 185 B.R. 146, 161 (Bankr. S.D.N.Y. 1995).

---

[9] Block billing refers to a single time entry that includes a variety of distinct tasks. See Rodriguez v. McLoughlin, 84 F. Supp. 2d 417, 425 (S.D.N.Y. 1999). Block billing makes it difficult for the court to allocate time to individual activities in order to gauge the reasonableness of time expended on each activity. For instance, a time entry on December 17, 2004 is described as follows: "Continued review of papers in opposition to motion to dismiss and e-mail to litigation team re reply to same; revision of new draft of papers on motion to quash service of process and circulation of same; attention to e-mail with Van Geldern re declaration." (Moerdler Decl. Ex. A at 22.) As this covers time expended on two, or perhaps three, discrete tasks, the Court is at pains to allocate the time expended on each task and make a judgment as to reasonableness.

While the Court recognizes that these time entries may well document legitimate work, there is inadequate detail to transfer all of these fees to Mr. Fagan.

In part because of these instances of block billing and vagueness, the Court is unable to accurately break the fee application into the individual tasks of which it is comprised. In the Court's estimate, Bank Austria spent 623.8 hours drafting the initial version of its motion to dismiss, 189.1 hours revising its motion to dismiss after Plaintiffs filed the amended complaint, 334.63 hours on its motion for Rule 11 sanctions, 62.98 hours on its motion to quash, and 57.38 hours in reply to Plaintiffs' opposition to the motion to dismiss.[10] Based on these tentative figures, the Court is concerned that the number of hours billed may exceed what was reasonably required for the tasks at hand. See Clarke v. Frank, 960 F.2d 1146, 1153 (2d Cir. 1992).

First, the Court is concerned that the 812.9 hours spent on multiple drafts of the motion to dismiss were excessive. The complaint was ultimately dismissed on jurisdictional grounds,

---

[10] The Court reaches these numbers by splitting the billing record into tasks according to the dates on which certain motions were filed or work was documented to have begun on a new task. In cases where several tasks overlap, as is the case with the reply brief, motion to quash, and motion for sanctions, the Court divided the overlap period by the number of tasks being worked on at that time. The Court recognizes that this method leaves some accuracy to be desired, but makes its best effort based on the information provided.

and the motion to dismiss focused primarily on the finality of the earlier settlement, jurisdictional arguments, and a lengthy recounting of Mr. Fagan's related lawsuits. While time-consuming evaluation of the earlier settlement and the issues raised by the instant complaint was necessary, comprehensive briefing of complex legal issues was minimal. Additionally, the 300-plus hours spent on the motion for sanctions seems an unwieldy percentage of the total number of hours spent throughout the course of litigation. Essentially, for every three hours spent defending Plaintiffs' action, Bank Austria spent another hour putting together its motion for sanctions. Mr. Fagan's conduct was flagrant, repetitive, and blatant. Bank Austria's motion for sanctions was meticulous and helpful, but the Court hesitates to find that the 334.63 hours spent on the motion were reasonable.

On the other hand, Bank Austria was confronted by the type of lawsuit that is often described as "bet the firm" litigation. Plaintiffs demanded $6.8 billion and were represented by a lawyer that played a substantial role in a multi-million dollar settlement with Bank Austria just years earlier. Putting up an aggressive, and ultimately successful, fight was a reasonable course of action. Cf. Landscape Props., Inc. v. Whisenhunt, 127 F.3d 678, 685 (8th Cir. 1997) (upholding an arguably excessive award to attorneys that defended against frivolous claims, because "the attorneys could not know how the district court

would view the case or their contentions, and they therefore reasonably determined that a careful and through preparation was necessary"). Indeed, the Court would expect Bank Austria to zealously protect the earlier settlement. Moreover, the defense efforts required by Bank Austria were multiplied by Mr. Fagan's conduct throughout the litigation and the broad, imprecise scope of the complaint.[11] The Court also notes that Bank Austria has not sought reimbursement for "time billed by the summer associates, paralegals and librarian-research assistants who worked on the case" (Moerdler Decl. ¶ 5) and has reduced the billing rates of its attorneys. (Moerdler Decl. ¶ 3.) Even still, some reduction for excess is appropriate.

In order to account for these instances of block billing, vagueness, and excess, the Court will reduce the lodestar figure. It is common practice in this Circuit to reduce a fee award by an across-the-board percentage where a precise hour-for-hour reduction would be unwieldy or potentially inaccurate. See, e.g., United States Football League v. Nat'l Football League, 887 F.2d 408, 415 (2d Cir. 1989) (affirming the reduction of billed hours by 10% for vagueness in time entries);

---

[11] The first complaint ran forty-six pages and included paltry factual allegations, vague jurisdictional allegations, and five prayers for relief, none grounded in federal law. The amended complaint was expanded to eighty-eight pages and included several affidavits, similarly flawed jurisdictional allegations, and twelve prayers for relief. Bank Austria faced an uphill battle to make sense of, and rebut, the sprawling complaint.

_Sea Spray Holdings, Ltd._, 277 F. Supp. 2d at 326 (S.D.N.Y. 2003) (reducing the lodestar figure by 15% to account for block billing and excessive time entries); _Libra Bank Ltd. v. Banco Nacional de Costa Rica_, 570 F. Supp. 870, 896 (S.D.N.Y. 1983) (reducing the lodestar figure by 20% to account for over-staffing). To better reflect the hours reasonably expended on this matter, the Court reduces the lodestar figure calculated above, $390,898.00, by 25%. Consequently, $293,173.50 is the proper lodestar figure for Bank Austria's reasonable attorney's fees.

Bank Austria also requests $52,347.14 in costs. The bank provides a detailed allocation of these costs (Moerdler Decl. Ex. E), and, after a thorough review, the Court finds them reasonable. This amount is added to the $293,173.50 adjudged in attorneys fees, adding up to a total of $345,520.64 for Bank Austria's reasonable litigation fees and costs.

### B. Attorney's Fees and Costs as a Rule 11 Sanction

Even after calculating reasonable attorney's fees and costs, the Court must review its measure of sanctions in light of the purposes of Rule 11. The primary purpose of Rule 11 sanctions is deterrence, _Caisse Nationale de Credit Agricole-CNCA v. Valcorp, Inc._, 28 F.3d 259, 266 (2d Cir. 1994), thus the amount of attorney's fees awarded as a sanction is squarely within the district court's discretion. While the district court

may use the lodestar method to calculate the appropriate sanction amount, it is also within the court's discretion to veer from this calculation and award a lesser amount that appropriately fulfills the deterrent function of Rule 11. Eastway Constr. Corp. v. City of New York, 821 F.2d 121, 122 (2d Cir. 1987), cert denied, 484 U.S. 918 (1987).

In the instant case, Mr. Fagan acts as a named plaintiff, a director of plaintiff organization AHVRAM, and Plaintiffs' lead counsel. Just five years before bringing this suit, Mr. Fagan played an important role in a settlement with Bank Austria that released the company from all claims for "Looted and/or Aryanized Assets." (Settlement Agreement § 1(B), Mar. 15, 1999.) The terms of that settlement were clearly stated. In addition, throughout this litigation Bank Austria warned Mr. Fagan that it would seek sanctions if Mr. Fagan refused to withdraw the lawsuit. Mr. Fagan's willingness to file a lawsuit in direct contradiction to the settlement he helped to produce, and in the face of Bank Austria's persistent warnings of a pending Rule 11 motion, convinces the court that to adequately deter Mr. Fagan from bringing baseless suits in the future, he must be held liable for the measure of reasonable fees and costs calculated above. A similar case in the Fifth Circuit informs this Court's decision: "By forcing [Mr. Fagan] to internalize the cost to [Bank Austria] of responding, the award of attorneys' fees

approximates optimal deterrence. It will dissuade [Mr. Fagan] and other lawyers in the future from pursuing exhausted claims without seeming overly punitive or giving [Bank Austria] a windfall." Merriman v. Sec. Ins. Co. of Hartford, 100 F.3d 1187, 1194-95 (5th Cir. 1996); see also Brandt v. Schal Assocs., Inc., 960 F.2d 640, 647 (7th Cir. 1992) ("A reasonably accurate measure of the harm [the plaintiff] has done is what he has cost his opponent. This is not an unreasonable method to deter spurious suits and wasteful trial tactics.").

While the measure of fees ordered by this Opinion is a heavy sanction, Mr. Fagan's behavior during the fee application process has reinforced this Court's conclusion that a heavy sanction is needed to appropriately deter Mr. Fagan from similar behavior in the future. The Court has given Mr. Fagan every opportunity to oppose Bank Austria's fee application. Despite the Court's repeated attempts to contact Mr. Fagan, and its October 26, 2005 order granting Mr. Fagan until November 1, 2005 to submit its opposition to Bank Austria's September 8, 2005 application, the Court received no correspondence from Mr. Fagan until October 31, 2005. Early that morning, in violation of the Judge's Rules for Attorneys 1 and 4, Mr. Fagan left a message on the chambers' voicemail informing the Court that he would submit an opposition in two weeks. As of this Opinion, the Court has received neither an opposition nor a formal request for

extension. This blatant disregard of procedural rules and careless abdication of his duties as a lawyer is characteristic of Mr. Fagan's conduct throughout this litigation. It is apparent to this Court that a heavy sanction is needed to deter Mr. Fagan from the conduct described in the August 19 Order.

As a final matter of the sanctions determination, courts must take into account the financial circumstances of the sanctioned party. Sassower v. Field, 973 F.2d 75, 81 (2d Cir. 1992). Nothing in the record indicates that Mr. Fagan is incapable of sustaining a judgment for attorney's fees. As noted above, Mr. Fagan has failed to submit any papers objecting to Bank Austria's fee application. Consequently, Mr. Fagan has not put the Court on notice of an inability to pay sanctions. Moreover, the Court notes that Mr. Fagan received a substantial attorney's fee award in a recent multi-million dollar settlement approved by this Court, In re Austrian & German Bank Holocaust Litig., No. 98 Civ. 3938, 2003 WL 402795 (S.D.N.Y. Feb. 21, 2003), and is reported to have received millions of dollars for his work in related lawsuits. See Daniel Wise, Handling of Holocaust Suit Leads to Attorney's Sanction, N.Y.L.J., Aug. 23, 2005, at 1. In sum, there is no evidence indicating Mr. Fagan's inability to pay Bank Austria's fees and costs.

Consequently, Mr. Fagan is ordered to pay $345,520.64 for Bank Austria's reasonable litigation fees and costs. This amount

is due in full, absent Mr. Fagan's posting of a supersedeas bond and attendant request for a stay of the judgment.

### III. Mr. Fagan's Fine

Now that Plaintiffs' motions for reconsideration and a stay of judgment have been denied, Mr. Fagan is ordered to pay the $5,000 fine set by the August 19 Order without delay. If he fails to pay the $5,000 fine or post a supersedeas bond by December 2, 2005, Mr. Fagan should be prepared to show cause as to why he should not be held in contempt for failure to abide by the Court's order.


SO ORDERED.


_____
SHIRLEY WOHL KRAM
UNITED STATES DISTRICT JUDGE



Dated:     New York, New York
           November ___, 2005

is due in full, absent Mr. Fagan's posting of a supersedeas bond and attendant request for a stay of the judgment.

## III. Mr. Fagan's Fine

Now that Plaintiffs' motions for reconsideration and a stay of judgment have been denied, Mr. Fagan is ordered to pay the $5,000 fine set by the August 19 Order without delay. If he fails to pay the $5,000 fine or post a supersedeas bond by December 2, 2005, Mr. Fagan should be prepared to show cause as to why he should not be held in contempt for failure to abide by the Court's order.

SO ORDERED.

SHIRLEY WOHL KRAM
UNITED STATES DISTRICT JUDGE

Dated:     New York, New York
           November 16, 2005